# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIEANN COLON, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CONCHETTA, INC. d/b/a CLUB RISQUE; RT, 413, INC. d/b/a CLUB RISQUE; TACONY 2008 INC. d/b/a CLUB RISQUE; CONNIE INNEZZELLI; DEAN M. PAGANO; RONALD CRUDELE; THEODORE PAGANO JR.; and DOE DEFENDANTS 1-10,<br><br>        Defendants. | Civil Action No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Julieann Colon ("Colon" or "Plaintiff"), individually and on behalf of all similarly situated employees, alleges as follows:

## INTRODUCTION

1.     It is black letter law that – unless exempt or an independent contractor -- all workers are entitled to (i) minimum wage for every hour worked and (ii) premium overtime compensation for all hours worked in excess of forty in a given workweek.

2.     Importantly, courts across the country for the last two decades have repeatedly held that exotic entertainers are entitled to compensation as they do not fit the definition of an independent contractor despite gentlemen's clubs routinely classifying them as such.

3.     Despite this plain truth, Defendants (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers")[1] as "independent contractors." Consequently, Defendants failed to pay Plaintiff and its Dancers at least the applicable minimum wage, as well

---

[1] Within Defendants' locations, the Dancers were also referred to as "Entertainers." *See* http://www.clubrisque.com/jobs/ (last visited January 19, 2017).

as premium overtime compensation for hours worked in excess of forty. In addition, Defendants improperly collects a portion of the tips Plaintiff and other Dancers receive from customers. Further, Defendant regularly required Plaintiff and other Dancers to improperly subsidize Defendants' business operations by forfeiting a portion of their tips to (i) management and (ii) employees who don't customarily and regularly receive tips.

4.      Defendants' conduct, as explained in detail below, is in violation of applicable federal and state wage and hour laws, including the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and Pennsylvania common law.

5.      Further, Defendants' wage violations occurred at each of its three clubs: (i) the "South Philly location," located at 1700 S. Christopher Columbus Blvd., Philadelphia, PA 19148; (ii) the "Northeast location," located at 5921 Tacony St., Philadelphia, PA 19135; and the "Bristol location," located at 3025 Veterans Hwy, Bristol, PA 19007. These three locations are collectively referred to herein as the "Club Risque Clubs."

### SUMMARY OF CLAIMS

6.      Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA" or the "Act").

7.      In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendants at one or more of the Club Risque Clubs within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("Collective Class").

2

8. In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages and inappropriately withheld tips, pursuant to the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL") and common law (the "PA State Laws").

9. Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendants at one or more of the Club Risque Clubs in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

10. Plaintiff allege on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid overtime wages for all hours worked in excess of forty in a work week; and (iii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

11. Plaintiff alleges on behalf of the PA Class that Defendants violated the PA State Laws by, *inter alia*: (i) failing to pay them the appropriate minimum wages for all hours worked; (ii) improperly denying them overtime wages for all hours worked in excess of forty hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the gratuities of the PA Class.

**PARTIES**

12. Plaintiff Julieann Colon ("Colon" or "Plaintiff") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a "Dancer" from in or about October 2013 through October 2015. Plaintiff was employed primarily in their Columbus

Boulevard location throughout her employment with Defendants, but also worked occasionally at their Northeast Location. While employed by Defendant, Plaintiff was improperly classified as an independent contractor and, consequently, Defendant failed to compensate Plaintiff properly for all hours worked.

13. Plaintiff has consented in writing to be plaintiff in this action and hereby submits her executed Consent To Sue form as Exhibit A.

14. Defendant Conchetta, Inc. ("Conchetta") is a Pennsylvania corporation that operates an adult night club located at 1700 S. Christopher Columbus Blvd., Philadelphia, PA under the name of Club Risque. According to publicly available documents, the President of Conchetta is Connie Innezzelli ("Innezzelli"). Based on certain news articles, the owners of this Club Risque are Theodore Pagano, Innezzelli and Dean Pagano. Defendant Conchetta employed Plaintiff as a Dancer. During the Class Period, Defendant improperly classified Dancers at its location as independent contractors and, consequently, failed to pay them in accordance with applicable law. Upon information and belief, at all relevant times, Defendant Conchetta's annual gross volume of sales made or business done was not less than $500,000.00.

15. Defendant Tacony 2008 Inc. ("Tacony") is a Pennsylvania corporation that operates an adult night club located at 5921 Tacony St., Philadelphia, PA under the name of Club Risque. According to publicly available documents, the President of Tacony is Ronald Crudele ("Crudele"). Defendant Tacony employed Plaintiff as a Dancer. During the Class Period, Defendant improperly classified Dancers at its location as independent contractors and, consequently, failed to pay them in accordance with applicable law. Upon information and belief, at all relevant times, Defendant Tacony's annual gross volume of sales made or business done was not less than $500,000.00.

4

16.     Defendant RT, 413, Inc. ("RT 413") is a Pennsylvania corporation that operates an adult night club located at 3025 Veterans Hwy, Bristol, PA under the name of Club Risque. According to publicly available documents, the President of RT 413 is Dean M. Pagano ("D. Pagano"). During the Class Period, Defendant improperly classified Dancers at its location as independent contractors and, consequently, failed to pay them in accordance with applicable law. Upon information and belief, at all relevant times, Defendant RT 413's annual gross volume of sales made or business done was not less than $500,000.00.

17.     Defendant Theodore Pagano ("Pagano") owns and operates the adult night clubs doing business as Club Risque. He is the father to Defendant Theodore Pagano Jr. and Dean Pagano. According to publicly available news sources, Defendant Pagano is involved in the operations of the Club Risque Clubs and suffers or permits Dancers to work. Upon information and belief, Defendant Pagano is a resident of the Commonwealth of Pennsylvania. In his capacity as owner and operator of Club Risque, Defendant Pagano exercises sufficient control over the labor policies and practices of Club Risque Clubs complained of herein to be considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

18.     Defendant Connie Innezzelli ("Innezzelli") owns and operates the adult night club doing business as Club Risque located at 1700 S. Christopher Columbus Blvd., Philadelphia, PA, where the club suffers or permits Dancers to work. Upon information and belief, Defendant Connie Innezzelli is a resident of the Commonwealth of Pennsylvania. In her capacity as owner and operator of Club Risque's South Philly location, Defendant Innezzelli exercises sufficient control over the labor policies and practices of Club Risque Clubs complained of herein to be considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

19.     Further, while performing at the South Philly location, Plaintiff recalls being informed that Defendant Innezzelli was the main manager for the club.

20.     Defendant Dean M. Pagano ("D. Pagano") owns and operates the adult night club doing business as Club Risque located at 3025 Veterans Hwy, Bristol, PA, where the club suffers or permits Dancers to work. Upon information and belief, Defendant D. Pagano is a resident of the Commonwealth of Pennsylvania. In his capacity as owner and operator of Club Risque's Bristol location, Defendant D. Pagano exercises sufficient control over the labor policies and practices of Club Risque Clubs complained of herein to be considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

21.     Defendant Ronald Crudele ("Crudele") owns and operates the adult night club doing business as Club Risque located at 5921 Tacony St., Philadelphia, PA, where the club suffers or permits Dancers to work. Upon information and belief, Defendant Crudele is a resident of the Commonwealth of Pennsylvania. In his capacity as owner and operator of Club Risque's Northeast location, Defendant Crudele exercises sufficient control over the labor policies and practices of Club Risque Clubs complained of herein to be considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

22.     Further, while performing at the South Philly location, Plaintiff recalls being informed that Defendant Crudele was a manager for the club. Indeed, Plaintiff recalls instances where Defendant Crudele would cash out Dancers at the end of the night.

23.     Defendant Theodore Pagano Jr. ("T. Pagano") owns and operates the adult night club doing business as Club Risque. According to publicly available news sources, Defendant T. Pagano is involved in the operations of the South Philly location and the Bristol location. As set forth above, both these locations suffers or permits Dancers to work. Upon information and

6

belief, Defendant T. Pagano is a resident of the Commonwealth of Pennsylvania. In his capacity as owner and operator of Club Risque, Defendant T. Pagano exercises sufficient control over the labor policies and practices of Club Risque Clubs complained of herein to be considered the employer of Plaintiff and the Classes for the purposes of the FLSA and PA State Laws.

24.     At all relevant times, Defendants have transacted business, including the employment of Dancers, within the Commonwealth of Pennsylvania, including within this district.

25.     Upon information and belief, Defendants are a single and joint employer with a high degree of interrelated and unified operations. Each of these Defendants shares the common labor policies and practices complained of herein. Indeed, upon information and belief, the sole reason for separate corporate entities was to limit the liability of each of the Defendants.

26.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

28.     This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the

proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class have a different citizenship from Defendants; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

29. Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

30. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

31. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

32. The crux of the FLSA and PA State Laws is, *inter alia,*: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of 40 hours a week; and (iii) that all gratuities earned by an employee are the property of the employee.

33. Contrary to these basic protections, Defendants improperly classified its Dancers, including Plaintiff, as "independent contractors" despite Defendants' extensive control over them. Consequently, Plaintiff and the members of the Classes were: (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of 40 per workweek; (iii) forced to improperly share a percentage of their gratuities with Defendants; and (iv) forced to reimburse Defendants for its ordinary business expenses.

## Industry Overview

34.     Dancers in Philadelphia, including Plaintiff and her former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners. *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L 465, 466 (1999).

35.     Accordingly, adult entertainment clubs such as the three locations Defendants control are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

36.     Over the past two decades, the Department of Labor ("DOL") and courts across the country (including within this very District) have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

37.     Despite these significant strides, adult night clubs still routinely deny Dancers the basic protections they are accorded under state and federal law. Indeed, the Club Risque Clubs are no exception. As set forth herein, the Club Risque Clubs regularly deprives Dancers of their rights under federal law, as well as the laws of the Commonwealth of Pennsylvania. Plaintiff brings this lawsuit to address these improper pay practices.

## The Club Risque Clubs

38.     Plaintiff and the members of the Classes are, or were, Dancers who worked at one or more of Defendants' Club Risque Clubs. As set forth above, the clubs are located at 1700 S. Christopher Columbus Blvd., Philadelphia, PA ("South Philly location"), 5921 Tacony

St., Philadelphia, PA ("Northeast location"), and 3025 Veterans Hwy, Bristol, PA ("Bristol location").

39.     Plaintiff worked primarily at the South Philly location and occasionally at the Northeast location.

40.     The Club Risque Clubs are operated by Defendants under uniform policies applicable to all the members of the Classes. Through these policies and procedures, Defendants maintain significant supervision and control over Plaintiff and members of Classes.

41.     Indeed, Defendants' Club Risque Clubs were highly integrated. For example, they shared a single website (www.clubrisque.com), which detailed upcoming events at each location and detailed various job openings (noting that an individual could apply "to the location of your choice!").[2]

42.     Notwithstanding Defendants' classification of Dancers as independent contractors, due to the amount of control Defendants have over its Dancers, Dancers are legally Defendants' employees. The amount of control Defendants exerted over its Dancers is set forth below in detail.

**Plaintiff's Work History With Defendants**

43.     Plaintiff worked for Defendants from October 2013 to October 2015.

44.     From October 2013 to approximately March 2014, Plaintiff typically worked six (6) days per week. She worked Monday through Thursday from 5:00 p.m. to 2:00 a.m. and on Fridays and Saturdays worked from 5:00 p.m. to 4:00 a.m. She usually did not work Sundays.

45.     In about March of 2014, Plaintiff's schedule changed. Instead of starting at 5:00 p.m., Plaintiff began her shifts at 9:00 p.m. Other than her start time, Plaintiff continued to work

---

[2] *See* http://www.clubrisque.com/jobs/ (last visited January 19, 2017).

the same six days and left work at the same time as her previous schedule (e.g., leaving work on Mondays at 2:00 a.m and Fridays and Saturdays at 4:00 a.m.).

46.     The above times reflected when Plaintiff was required to be either (i) on the floor and interacting with Defendants' customers or (ii) performing on stage and/or providing private dances. Thus, in order to be on the floor in time, Plaintiff typically arrived fifteen (15) to twenty (20) minutes before her scheduled start time in order to change into her required dance attire.

47.     Because of her long hours, management considered Plaintiff working a double shift on most nights she worked.

48.     As such, Plaintiff typically worked well in excess of forty hours in a week, working on average approximately 58 hours per week from October 2013 to March 2014 and approximately 42 hours per week for the remainder of her time with Defendants.

49.     Plaintiff's experience was typical of other Dancers, as Dancers routinely worked hours in excess of 40 in a week.

50.     Plaintiff typically worked at the South Philly location.

51.     However, when Plaintiff first started working for Defendants, she was required to work in the Northeast location at least once a week. Thereafter, for about the remainder of her first year of working for Defendants, Defendants required Plaintiff to continue to work at least 1 day per month in the Northeast location. .

52.     Importantly, there was no discernable difference in Plaintiff's employment duties or Defendants' policies or procedures, including treating Plaintiff as an independent contractor, when Plaintiff performed at the Northeast location as opposed to the South Philly location.

11

## Hiring, Firing, and Scheduling

53.     Defendants have the power to hire and fire Dancers, and have rules governing the conditions under which Dancers work.

54.     A Dancer is required to complete their work schedule one month in advance.

55.     Dancers are required to work at least two weekends (Fridays and Saturdays) and two Mondays or Tuesdays per month. Thus, the minimum number of days a Dancer was required to work was set by Defendants to include at least six (6) days per month.

56.     Notably, Mondays and Tuesdays are typically the two slowest days in the Club Risque clubs.

57.     Consistent with Plaintiff's experience, a new Dancer who chose to work at the South Philly location was required to also work at the Northeast location at least once per month (or more, if Defendants deemed it necessary).

58.     The shifts are limited to the following times: (i) the "day shift" from 11:00 a.m. to 5:00 p.m., (ii) the "night shift" from 5:00 p.m. to 10:00 p.m., and (iii) the "evening shift" from 9:00 p.m. to 2:00 a.m. On Friday and Saturday nights, because the South Philly location was open later, there was also the shift from 10:00 p.m. to 4:00 a.m.

59.     Defendants considered it a double shift if a Dancer, such as Plaintiff worked from 5:00 p.m. to 2:00 a.m.

60.     Importantly, if a Dancer attempts to complete a schedule that contains less than the minimum six days, they are required to add another day before their schedule will be approved.

61.     Defendants' scheduling policy also requires that all Dancers stay until the end of their shift. This is because Defendants required a minimum number of Dancers to be at its

location for each shift. Plaintiff believes that Defendants required at least 15 Dancers during the weekdays and at least 40 during Friday and Saturday nights (as those were the South Philly location's busiest times).[3]

62. Accordingly, and unlike true independent contractors, Defendants' Dancers are required to work a minimum number of hours per week.

63. Further, a Dancer is required to check in as soon as they arrive for their shift. Indeed, the managers maintained a schedule of which Dancers were scheduled to work each particular shift.

64. Finally, Defendants can determine that a Dancer is "fired" and thus no longer permitted to perform at Defendants' Club Risque locations. Plaintiff is aware of instances where Defendants fired certain Dancers because they arrived past their scheduled shift start time.

65. Indeed, Dancers could be fired for any reason Defendants deemed fit, irrespective of whether it has any relation to the job duties of the Dancer in question.

66. Importantly, as further evidence of the control exhibited over Dancers, Defendants did not permit Dancers to perform at both a Club Risque Club and another gentleman's club. Plaintiff remembers a specific instance where she tried to work at another gentleman's club, Cheerleaders, and was told by Defendant Connie Innezzelli to choose where she wanted to work and threatening to terminate Plaintiff if she attempted to work at both clubs.[4]

67. Accordingly, unlike true independent contractors, Dancers are: (i) required to work a set number of hours per month; (ii) required to work a set number of days per month; (iii)

---

[3] Defendants, however, did make exceptions if a Dancer was severely ill and there were enough Dancers at the location.

[4] Clearly this alone evinces Defendants' extreme control over Dancers – placing Dancers squarely outside the parameters of true independent contractors.

not permitted to work at other clubs; and (iv) subject to termination based on Defendants' prerogative.

## Appearance & Performance

68.    Dancers are required to comport their appearance to Defendants' requirements even though such requirements have no bearing on the performance of Dancers' underlying job duties.

69.    For example, while bikinis were permitted during the day, Defendants required Dancers to wear dresses or skirts if working after 7:00 p.m.  Accordingly, when Plaintiff worked past 7:00 p.m., she had to ensure that she wore a dress or skirt.

70.    In addition, Dancers could not put their hair up if working at night (again after 7:00 p.m.).

71.    Further, Defendants required Dancers to wear heels.  They could not wear sneakers or other shoes while performing.

72.    Defendants also dictated the manner in which Dancers performed their stage routine.

73.    First, Defendants dictated the number of stages a Dancer was required to perform on during her rotation.  Second, Defendants dictated the order in which a Dancer was to appear on each stage.

74.    For example, at the South Philly location there were multiple stages.  Defendants dictated that a Dancer had to perform at the side stage on the left side of the entrance to the club first, then the side stage on the right side of the main stage, then at the front of the center stage, and finally at the back of the center stage.

75. Importantly, a Dancer was not permitted to skip performing at a stage, perform in an order not proscribed by Defendants, or skip performing on stage for an entire shift.

76. Further, unless a customer paid the club money, a Dancer was not permitted to skip performing on stage because they were talking to a customer on the floor.[5]

77. Defendants also mandated that Dancers enter the main stage from a designated staircase as opposed to directly from the floor.

78. In addition, Defendants also mandated that by the time the Dancer performed during their second song of their set, they had to be topless.

79. Further, a Dancer was not permitted to leave the mainstage prior to the next Dancer's arrival (effectively requiring that there always be a Dancer on stage).

80. Defendants also required Dancers, after performing at the back of the main stage, at the South Philly location to walk around the inside of the bar before getting dressed and returning to either the floor or the dressing room.

81. Finally, a Dancer could not leave the club before the end of their shift (unless authorized by a manager).

82. In short, Defendants exerted an extensive amount of control over the Dancer's appearance as well as how, when, and where they performed their routine within the club.

83. Upon information and belief each of the Club Risque locations had similar policies and procedures in place as the South Philly location.

---

[5] Of course, a Dancer could be skipped if they were performing a private dance for the customer – ostensibly because the club was keeping a portion of the money the client paid the Dancer for the private performance.

## House Fees & Corrective Behavior

84. Rather than pay its Dancers the applicable minimum wage, Defendants required its Dancers, including Plaintiff and members of the Classes, to pay "House Fees" for each shift that Dancers work.

85. Typically, the House Fee was $15 per shift. Importantly, a Dancer must pay the House Fee for every shift she works regardless of the amount of tips she receives. Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using the club's ATM machine.

86. On most nights, Defendants collected the House Fee from Plaintiff before Plaintiff even started performing/collecting tips from customers.

87. Because the House Fee was "per shift," on the nights where Plaintiff was considered working a double shift by management (which was most nights), Plaintiff had to pay twice the House Fee (and thus $30).

88. In addition to the House Fee, the Club Risque Clubs routinely issued warnings to Dancers for engaging in behavior Defendants deemed against its policies and procedures.

89. Indeed, Defendants routinely issued Dancers warnings for such behavior as: (i) leaving stage without waiting for their replacement; (ii) being late for stage set; (iii) chewing gum while on stage; (iv) using cell phones or other electronic devices while on stage; and (ix) leaving early without management approval.

90. Plaintiff is aware of instances where Dancers were fired and/or required to leave the club for repeated violations of Defendants' proscribed behavior.

## Tip Retention & Mandatory Tip Outs

91.     It is black letter law that tips received by an employee belong to the employee, and an employer has no ownership interest in said tips. Indeed, according to the DOL's Regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.

92.     Despite this plain fact, Defendants unlawfully retained a portion of tips Dancers received from Defendants' customers.

93.     Moreover, Defendants also mandate the fees a Dancer may charge customers for her services. By way of example, Defendants maintain a policy establishing the amount a Dancer is required to charge for private performances.

94.     Indeed, the DJ and other club personnel notify patrons of the cost for a "lap dance" and "champagne room" dance, thereby eliminating the possibility that a Dancer can set their own rate. Notably, these individuals give no indication that Defendants retain a portion of the "lap dance" or "champagne room" dance charges.

95.     For example, Defendants mandate that a "lap dance" for one song is $20, of which a Dancer only retained $15, and that a "champagne room" dance for 30 minutes is $200, of which a Dancer only retained $125.

96.     As a result, customers who believe that they are tipping Dancers a certain amount are actually tipping them less, due to the aforementioned deductions taken by Defendants.

97.     As set forth below, these deductions are in contravention of applicable law.

98.     Moreover, on certain occasions (i.e., during football games), Defendants would provide patrons with coupons for free "lap dances." In such instances, the Dancer was required

to provide a lap dance to a customer who requested a dance and the club only provided the Dancer with $10 when the Dancer handed in the coupon.

99. In addition, Defendants also subject Dancers to mandatory tip-outs. That is, Dancers are required to tip certain of Defendants' employees. Importantly, the individuals that Defendants require its Dancers to share their tips with do not provide customer service.

100. Upon information and belief, Defendants use these tips paid by Dancers to offset its ordinary business expenses. Stated another way, Defendants require Dancers to tip these individuals so that Defendants can then reduce its labor costs by having the Dancers supplement the compensation Defendants pay its other employees.

101. The number of individuals Dancers are required to tip is numerous and the tip amount is significant. Defendants have a *mandatory* tip out policy whereby Dancers must each tip a minimum of (i) $8 to the House Mom and (ii) $10 to the club's DJ. The aforementioned amounts are the required minimum tip.

102. In addition, the mandatory tip out was *per shift*. Thus, when Plaintiff worked a double shift, here mandatory tip out was double the above amounts.

103. Thus, for the days Plaintiff worked a double shift, she was required to pay (i) $30 for House Fees, (ii) $16 to the House Mom, and (iii) $20 to the DJ, paying $66 in total. Accordingly, Dancers are required to tip Defendants a significant amount for each shift worked.

104. As a result of the mandatory house fees and required tip-outs, Dancers sometimes receive little to no actual compensation despite hours of work. Indeed, after paying all fees and tip-outs, Plaintiff's take home compensation one evening was only $30.00, despite working a full shift.

### Additional Control

105.    Because of the strict dress code Defendants mandate that Dancers conform to at the Club Risque Clubs, Defendants ensure that the House Mom has dresses for Dancers to rent for the shift as well as outfits and shoes for Dancers to purchase.

106.    Importantly, Defendants do not reimburse Dancers for the cost of their uniforms. In addition, Defendants do not pay for the cost of laundering or maintaining these unique uniforms.

107.    While working at Defendants' locations, Plaintiff has rented dresses and purchased shoes in order to conform to Defendants' strict dress code.

108.    Exemplifying the degree of control Defendants have over Plaintiff and members of the Classes, Dancers are not permitted to select their own music.  At best, they could request a song or the style of music from the DJ.

109.    In short, Defendants maintain significant supervision and control over Plaintiff and members of Classes and sets the rules governing the conditions under which Dancers work.

110.    Such rules include: (i) the minimum number of days a Dancer must work, and at which time; (ii) that Dancers must check in upon arrival for work; (iii) the minimum number of hours a Dancer must work in a given day; (iv) that Dancers must wear certain uniforms and that if they do not have such uniforms, they must purchase the uniform from Defendants; (v) exert control over the Dancers appearance;  (vi) dance on stage for a set number of songs and perform at certain stages, as well as the order in which the stages must be danced; (vii) which music a Dancer may perform to (in other words, a Dancer cannot select their own music); and (viii) share tips with other employees, including mandating which employees must be tipped and the minimum amount of the tip.

111.   In addition and as above, Defendants prohibit its Dancers from doing a number of activities while on duty.  Such prohibitions include: (i) leaving the stage until the end of the Dancer's routine; (ii) wearing certain types of shoes and/or certain kinds of clothes; (iii) chewing gum while on stage; and (iv) using their cell phones while on stage or the main floor[6].

112.   Further, it was understood that Defendants did not want Dancers discussing the terms of a Dancer's compensation with a customer (*i.e.,* what portion of a "lap dance" a Dancer keeps), and discussing the club's operating procedures with a customer (*i.e.,* any fee split between Dancer and Defendants).

113.   The extent of Defendants' control over its Dancers is also demonstrated by the fact that Defendants determined the rate and method of payment Dancers received, including but not limited to the percentage of tips that the Club Risque Clubs would retain and the fact that Dancers would not receive any wages while working at the club.

114.   Defendants have been unjustly enriched to the detriment of the Classes by: (i) requiring Dancers to pay money out of their tips to pay for the ordinary business expenses of Defendant; (ii) requiring Dancers to forfeit a portion of their tips to Defendants; (iii) paying Dancers less than the mandated minimum wage while failing to comply with the requirements for doing so; and (v) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week.

115.   Evidence generally reflecting the number of uncompensated hours worked by Dancers in the possession of Defendants.

116.   While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of

---

[6] While Dancers could use their cell phone if seated above the floor, near the DJ booth, Plaintiff recalls Dancers being reprimanded for having their cell phones out while walking the floor.

discovery. Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## Defendants Are Not Entitled To Any Offsets

117.    Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants classified its Dancers as independent contractors and required its Dancers to pay Defendants in order to work at Defendants' establishment. Consequently, Defendants do not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked during their shift.

118.    Further, because Defendants did not pay its Dancers any cash wage, Defendants cannot claim a tip credit pursuant to Section 203(m) of the FLSA.[7]

119.    Finally, because of the manner in which Defendants handled the monies earned from private dances, it cannot claim a "service-charge offset."

120.    Just last summer, the Fourth Circuit held that a gentleman's club is not entitled to claim a "service-charge offset" against compensation due and owing to misclassified exotic dancers as a matter of law because it did not include the money for private dances in its gross receipts. *See McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235, 246 (4th Cir. 2016).[8]

---

[7] Indeed, because Defendants improperly classified its Dancers as independent contractors, it cannot be credibly argued that Defendants complied with the tip credit notification requirements set forth in Fact Sheet #15 which include, *inter alia,* requiring employers to notify its employees of the amount of the credit the employer intends to claim.

[8] This decision is in accord with the Department of Labor's regulations regarding service charges. In pertinent part, the regulations state unambiguously that "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act." 29 C.F.R. § 531.55(b). Accordingly, "[w]here such sums are distributed by the employer to its employees . . . they may be used in their entirety to satisfy the monetary requirements of the" FLSA. *Id.* Because, as set forth above, they did not become part of Defendants' gross receipts, they cannot be used to satisfy the minimum wage (or overtime) requirements of the FLSA.

121. Here, upon information and belief, Defendants likewise did not include the money for private dances in its gross receipts.

122. Rather, at the end of the night, a Dancer handed in the tickets they received from Defendants for each "private dance" and "champagne room dance" they performed that night. In exchange for the tickets turned in, Defendants provided the Dancer with cash -- $15 for each private dance and $125 for each champagne room dance performed that night.

123. Plaintiff recalls that during her time at the South Philly location, Defendant Crudele was often involved in this cash out at the end of the night.

124. While Plaintiff worked at Defendants' locations, to encourage Dancers to turn in all their tickets each night, Defendants changed the color of the private dance on a daily basis.

125. Further, Defendants kept a sheet that listed the number of private dances performed by each Dancer for a given night.

126. Finally, Plaintiff did not receive an IRS Form 1099 regarding the sums she earned from private dances and/or champagne room dances. Presumably, had Defendants included the amount in its gross receipts, it would have provided its Dancers with a Form 1099 so as to demonstrate to the IRS that the monies received from customers for private dances and/or champagne room dances were accounted for and properly recorded for tax purposes.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

127. Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

128. The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b). The claims brought pursuant to the PA State Laws may be

pursued by all similarly-situated persons who do not opt out of the PA Class pursuant to Fed.R.Civ.P. 23.

129.	Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over a hundred individuals in each of the Classes.

130.	Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

131.	The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

132.	Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)	whether Plaintiff and Dancers were improperly classified as independent contractors by Defendants;

(b)	whether Defendants have failed to pay minimum wages for each hour worked;

(c)	whether Plaintiff and Dancers were required to pay Defendants, in cash, fees for each shift worked;

(d)	whether Defendants improperly retained any portion Plaintiff and Dancers' tips;

(e)     whether Defendants have failed to pay overtime compensation for all hours worked in excess of 40 per workweek;

(f)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

(g)     whether Plaintiff and members of the Classes are entitled to restitution; and

(h)     whether Defendants are liable for attorney's fees and costs.

133.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are in alignment with those of the members of the Classes. They have no interests adverse to the class they seek to represent, and have retained competent and experienced counsel.

134.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

135.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices.

136.    Defendants have acted willfully and have engaged in a continuing violation of the FLSA and PA State Laws.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
#### (On Behalf of the Collective Class)

137.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

24

138.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

139.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

140.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

141.    Pursuant to Defendants' compensation policies, rather than pay Dancers the federally-mandated minimum wage, Defendants improperly classified Plaintiff and other Dancers as independent contractors.

142.    As a result of the Defendants' willful practices, Defendants were not entitled to pay Plaintiff and the members of the Collective Class less than the mandated minimum wage for all hours worked.

143.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

144.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS
### (On Behalf of the Collective Class)

145.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

146.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

147.   At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

148.   At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

149.   At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek due to Defendants' improper classification of Plaintiff and Dancers as independent contractors.

150.   Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

151.   Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
### PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
#### (On Behalf of the PA Class)

152.   Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

153.   At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

154. Pursuant to Defendants' compensation policies, rather than pay Dancers the required minimum wage in Pennsylvania, Defendants improperly classified Dancers as independent contractors and did not pay them any wage whatsoever.

155. At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of not paying Dancers the required minimum wage as required under applicable Pennsylvania law.

156. At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of requiring Dancers to surrender a portion of their tips to Defendants to offset Defendants' business expenses.

157. At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy both the cash component portion and the notification requirements in order for Defendants to claim the tip credit.

158. As a result of Defendants' willful practices, Defendants were not entitled to classify Dancers as independent contractors, nor fail to pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

159. Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

160. Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

# FOURTH CLAIM FOR RELIEF
## PENNSYLVANIA MINIMUM WAGE ACT– OVERTIME WAGE VIOLATIONS
### (On Behalf of the PA Class)

161.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

162.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

163.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

164.    Pursuant to Defendants' policies and procedures, Plaintiff and the members of the PA Class were improperly classified as independent contractors and not paid any wage irrespective of whether a Dancer worked in excess of forty hours in a particular week.

165.    This did not compensate Tipped Employees premium overtime compensation in an amount at least equal to one and one-half times the applicable minimum wage for all hours worked in excess of forty in a workweek.

166.    Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

167.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid overtime wages, attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
## PENNSYLVANIA WAGE PAYMENT COLLECTION LAW
### (On Behalf of the PA Class)

168.    Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

169.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

170.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

171.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

172.    Further, due to Defendants' policy of deducting amounts from the tips of Plaintiff and the PA Class to offset business losses/expenses, Plaintiff and the PA Class were subject to improper deductions from their compensation.

173.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

## SIXTH CLAIM FOR RELIEF
## PENNSYLVANIA COMMON LAW – UNJUST ENRICHMENT
### (On Behalf of the PA Class)

174.    Plaintiff, on behalf of herself and the PA Class Members, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

175.    Plaintiff and the members of the PA Class were employed by Defendants within the meaning of the PA State Laws.

29

176.     At all relevant times, Defendants had a willful policy and practice of denying Dancers their full share of gratuities.

177.     During the class period covered by this Complaint, Defendants had a willful policy and practice of having Dancers subsidize Defendants' business expenses by requiring Dancers to tip certain individuals a required minimum amount. Further, Defendants had a willful policy and practice of not paying Dancers for appearances at events outside the club.

178.     Moreover, Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

179.     Defendants retained the benefits of its unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

180.     Defendants were unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

181.     As direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the PA Class.

182.     Plaintiff, on behalf of herself and the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the PA Class requests the following:

A.     Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of

this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.      Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

D.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

E.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

F.      An award of unpaid overtime wages to Plaintiff and the members of the Classes;

G.      Restitution of wages and gratuities improperly retained by Defendants;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

J.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: March 2, 2017                              Respectfully submitted,

                                                 CONNOLLY WELLS & GRAY, LLP

                                                 By: _____
                                                 Gerald D. Wells, III
                                                 Robert J. Gray
                                                 2200 Renaissance Blvd., Suite 275

King of Prussia, PA 19406
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: gwells@cwglaw.com
rgray@cwglaw.com

**THE KEHOE LAW FIRM**
Michael K. Yarnoff
Two Penn Center Plaza
1500 JFK Boulevard, Suite 1020
Philadelphia, PA 19102
Telephone: (215) 792-6676
Facsimile: (215) 792-6676
Email: myarnoff@kehoelawfirm.com

*Attorneys for Plaintiff*

# EXHIBIT "A"

# CONSENT TO BECOME A PARTY PLAINTIFF

I, Julieann Colon, consent to sue as a Plaintiff in this action, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

a. During the applicable period, I was an employee of Defendants and was not paid properly for all hours worked.

b. By my signature below, I hereby authorize counsel to prosecute the claims in my name and on my behalf in this action, for Defendants' failure to pay all wages due and owing in accordance with the federal law.

_____
Date

Julieann Colon
Print Name

_____
Signature