# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIEANN COLON, on behalf of herself and all others similarly situated, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | No. 17-0959 |
| CONCHETTA, INC. d/b/a CLUB RISQUE; RT, 413, INC. d/b/a CLUB RISQUE; TACONY 2008 INC. d/b/a CLUB RISQUE; CONNIE INNEZZELLI; DEAN M. PAGANO; RONALD CRUDELE; THEODORE PAGANO JR; and DOE DEFENDANTS 1-10, | : : : : : : : : : | |
| Defendants. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                **JUNE 14, 2017**

Presently before the Court is the Motion to Compel Arbitration and Dismiss the Proceedings, and Stay Discovery filed by Defendants Conchetta Inc. d/b/a Club Risque, RT 413, Inc. d/b/a Club Risque, Tacony 2008 Inc. d/b/a Club Risque, Connie Innezzelli ("Innezzelli"), Dean M. Pagano, Ronald Crudele ("Crudele"), Theodore Pagano Jr., and Doe Defendants 1-10 (collectively "Defendants"), Plaintiff Julieann Colon's ("Colon") Response in Opposition, Defendants' Reply Brief, and Colon's Notice of Supplemental Authority. For the reasons noted below, we grant Defendants' Motion.

## I.    BACKGROUND

On March 2, 2017, Colon filed the present class action before this Court alleging federal and Pennsylvania state wage violations. Specifically, Colon claims she was an exotic dancer at

various entities doing business as "Club Risque." (Compl. ¶ 12.) The essence of her Complaint is that she and others are entitled to damages because Defendants improperly classify exotic dancers as "independent contractors." (Id. ¶¶ 12, 33.) Thus, Colon claims that the Defendants have, *inter alia*, violated federal and Pennsylvania state law relating to the failure to pay the applicable minimum wage; failure to pay overtime compensation in excess of forty hours; improper collection of a portion of tips the dancers receive from the public; and improper subsidization of the businesses by requiring a portion of tips to be forfeited to management and employees who do not regularly receive tips. (Id. ¶ 3.)

On April 11, 2017, Defendants filed a Motion to Compel Arbitration and Dismiss the Proceedings, and to Stay Discovery Pending Determination of the Motion, which relies upon an arbitration provision contained in a "Performer License and Temporary Space Lease Agreement" (the "Agreement"). (Defs' Brief; Ex. A § 16.) Colon filed a Response in Opposition, Defendants filed a Reply Brief, and Colon filed a Notice of Supplemental Authority.

## II. **LEGAL STANDARD**

In order to determine whether a valid arbitration agreement exists, we must initially decide whether that determination is made under Federal Rule of Civil Procedure 12(b)(6) or 56, and thus, what materials may be considered. See Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015). "Motions to compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'" Id. (quoting Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773–74 (3d Cir. 2013)). "If the motion to compel arbitration is not based on a complaint 'with the requisite clarity' to establish arbitrability or 'the opposing party has come forth with reliable evidence that is more than a naked assertion

that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did,' resort to discovery and Rule 56 is proper." Id. (ellipsis omitted) (quoting Guidotti, 716 F.3d at 774).

Colon does not mention the Agreement in her Complaint, although it is clearly integral to her claims. See Hewitt v. Rose Grp., No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) ("It would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints."). Defendants attached the Agreement to their Brief, and Colon does not contest its authenticity. Indeed, Colon admits to signing the Agreement on February 18, 2015. (Pl.'s Resp. in Opp'n at 11.) Because there is no question that the Agreement is integral to Colon's claims and no dispute of its authenticity, we will consider it.

Finding that arbitrability is facially established, the Rule 12(b)(6) standard applies. See Guidotti, 716 F.3d at 776 (stating under the Rule 12(b)(6) standard, "[w]e consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents") (citation omitted); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that even if a "[c]omplaint does not explicitly refer to or cite [a document] . . . the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited"); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient

3

claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."). Thus, pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the facts plead in the Complaint construing them in the light most favorable to Colon. See Fed. R. Civ. P. 12(b)(6).

We also note that no discovery is needed because any further development of the factual record is unnecessary to decide the instant Motion. Therefore, we deny Colon's request for discovery.

## III. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). The FAA provides that "'[a] written provision' in a maritime or commercial contract showing an agreement to settle disputes by arbitration 'shall be valid, irrevocable, and enforceable, save upon grounds as exist in law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. § 2). "Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).

### A. The Agreement to Arbitrate Arbitrability

At the outset, Defendants assert that any challenge Colon makes regarding the Agreement or the arbitration clause must be submitted to the arbitrator. (See Defs' Brief at 10.) In other words, Defendants claim that, pursuant to the express language in the Agreement, any argument

4

concerning the validity, enforceability, or scope of the Agreement or arbitration provision must be decided by the arbitrator, not the Court. (See id.)

In Rent-A-Center, West, Inc. v. Jackson, the Supreme Court of the United States ("Supreme Court") clarified how courts are to decide a challenge to an arbitration agreement that contains a provision requiring arbitration of "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." 561 U.S. 63, 70 (2010) (internal quotation marks omitted). The Court noted a distinction between a challenge to the arbitration agreement as a whole, and a challenge to the agreement to arbitrate arbitrability. See Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 229 (3d Cir. 2012) ("To eliminate the confusion caused by an agreement to arbitrate nested within another agreement to arbitrate, the *Rent-A-Center* Court found it necessary to distinguish between the overall arbitration agreement (the 'contract'), and the agreement to arbitrate arbitrability (the 'delegation clause')."). The latter is referred to as a "delegation provision," which is "an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Center, 561 U.S. at 68. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 70.

Although "questions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination. . . . [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." Quilloin, 673 F.3d at 228 (alterations omitted) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Significantly, unless the party opposing arbitration

5

challenges the delegation provision *specifically*, "we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Center, 561 U.S. at 72.

We must first look to whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. See Quilloin, 673 F.3d at 228 (quoting First Options, 514 U.S. at 944). The arbitration provision in the Agreement provides as follows:

> **The parties agree that this Agreement is subject to binding arbitration** pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, and will be governed by the following:
>
> \* \* \* \* \* \*
>
> 3.  **Scope of Arbitration and Arbitrability Reserved to the Arbitrator**
>
> This provision's purpose is to ensure that an arbitrator—**not** a court—will decide ALL federal, state, statutory, and common law claims between the Parties and to ensure that the class action waiver provision will apply to all such claims regardless of whether there are any pending collective or class actions pending at the time the agreement is entered. *The Parties expressly agree that the arbitrator will decide all issues in the first instance, including, but not limited to all gateway questions of arbitrability concerning: substantive arbitrability; the scope of this arbitration provision; the provision's applicability to a particular dispute; procedural arbitrability; whether the Parties have complied with this arbitration provision; the validity and enforceability of the Agreement as a whole; the validity and enforceability of the arbitration provision; and whether the arbitration clause is substantively or procedurally unconscionable. . . .* Should Performer attempt to disavow the nature of the Parties' relationship of its classification as an Independent Performer, Licensee and Temporary Space Lessee, and not an "employee," such challenges will be heard exclusively by the arbitrator, not a court.

(Defs' Brief; Ex. A § 16.) (italics added)  Based on the language above, we find there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  Indeed, the language could not be clearer that the parties have agreed that the arbitrator will decide all threshold issues.

Colon mounts a number of challenges to the Agreement and arbitration provision.  She first argues that the Agreement is inapplicable to her claims because her claims are outside the scope of the Agreement.  (Pl.'s Resp. in Opp'n at 7-9.)  She further argues that the Agreement is illusory and that the Agreement and arbitration clause are unconscionable due to their one-sided nature.  (Id. at 9-19.)  Lastly, she asserts the arbitration agreement violates the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169, because the class action waiver inhibits the dancers' collective adjudication rights.  (Id. at 19-24.)

All of Colon's arguments suffer from the same deficiency as the plaintiff's arguments in Rent-A-Center.  In Rent-A-Center, all of the plaintiff's challenges related to the enforceability of the arbitration agreement as a whole, rather than a specific challenge to the arbitration agreement's delegation clause.  Rent-A-Center, 561 U.S. at 72.  As a result, because the plaintiff failed to challenge the delegation clause specifically, the Supreme Court held that the agreement to arbitrate arbitrability was valid under § 2 of the FAA and enforceable under §§ 3 and 4.  Id.  Like the plaintiff in Rent-A-Center, all of Colon's arguments concern the Agreement overall or simply the arbitration provision in general.  In her Response in Opposition, we recognize that Colon does quote the delegation clause in its entirety.  (Pl.'s Resp. in Opp'n at 12.)  However, the reference appears only for procedural and factual purposes and does not serve as the basis for any substantive argument.  (See id.)  As Defendants note in their Reply Brief, Colon has failed to assert any argument levied specifically towards the delegation clause.  (Defs' Reply Br. at 8.)

7

Colon's arguments regarding scope, whether the Agreement is illusory, unconscionability, and any violation of the NLRA miss the mark because a valid delegation clause is severable from the remainder of the contract and is unaffected by the contract's validity. See Quilloin, 673 F.3d at 229. Pursuant to the language in the Agreement, all of Colon's challenges are for the arbitrator to decide, not this Court. Accordingly, any questions of arbitrability must go to the arbitrator.

### B. Arbitration Will Be Ordered For All Defendants

Now that we have determined that the questions regarding arbitrability are to be decided by the arbitrator, the question remains as to whether Colon must arbitrate her claims against all of the Defendants. Colon argues that she does not have to arbitrate her claims against most of the Defendants because they were non-signatories to the Agreement. (Pl.'s Resp. in Opp'n at 24.) Although she is correct that a number of the Defendants did not actually sign the Agreement, we reject her argument and order arbitration as to all Defendants.

The gravamen of Colon's argument is that the Agreement was signed between Defendant Conchetta, Inc. d/b/a Club Risque (identified in the Agreement as "the Club") and herself. (Id. at 24, 25; see also Defs' Brief; Ex. A at 1, 6.) Thus, in her view, Defendants Innezzelli, Dean M. Pagano, Crudele, Theodore Pagano Jr., and Doe Defendants 1-10 cannot compel her to arbitrate her claims because there was no mutual assent to be bound by the terms of the arbitration agreement. (Pl.'s Resp. in Opp'n at 26.) In their Reply Brief, Defendants argue that Colon must arbitrate her claims against all Defendants based on the theories of agency, equitable estoppel, and alter ego. (Defs' Reply Br. at 10-14.) Because the theories of agency and equitable estoppel clearly allow the non-signatories to compel arbitration of Colon's claims against them, we need not address alter ego.

1. *Agency*

The United States Court of Appeals for the Third Circuit ("Third Circuit") has recognized that a non-signatory to an arbitration agreement may compel a signatory to arbitrate claims based under a traditional agency theory. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993). "To bind a principal by its agent's acts, the plaintiff must demonstrate that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship." E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 199 (3d Cir. 2001). "Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." Pritzker, 7 F.3d at 1121.

Here, Colon's own pleading belies her argument that all of the Defendants, except Conchetta, Inc. d/b/a Club Risque, cannot compel arbitration because they were non-signatories to the Agreement. In her Complaint, Colon alleges

> [u]pon information and belief . . . at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

(Compl. ¶ 26.) Third Circuit precedent dictates that agents, employees, and representatives are covered under the arbitration clause of a principal. See Pritzker, 7 F.3d at 1121. Taking the allegations in Colon's Complaint as true, as we must, we find that all of the Defendants are covered by the arbitration agreement based on the theory of agency.

9

## 2. *Equitable Estoppel*

"A non-signatory to a contract may bind a signatory to arbitrate a dispute when 'traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" Torres v. CleanNet, U.S.A., Inc., 90 F. Supp. 3d 369, 379 (E.D. Pa. 2015) (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)). Pennsylvania law allows for a theory of equitable estoppel. Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014). In DuPont, the Third Circuit outlined two theories of equitable estoppel that may apply in the arbitration context. DuPont, 269 F.3d at 199-200. Under the first theory, "courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. Id. at 199 (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir. 1995)). Under the second, "courts have bound a signatory to arbitrate with a non-signatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations." Id. (citing Thomson, 64 F.3d at 779) (internal quotation marks and alteration omitted).

The first theory of equitable estoppel has no application in the instant matter because Colon, a signatory to the Agreement, is seeking to avoid the compulsion of arbitration asserted by non-signatories. Thus, the second theory of equitable estoppel, commonly known as "alternative estoppel," see White v. Sunoco Inc., 189 F. Supp. 3d 486, 494 (E.D. Pa. 2016), is more appropriate. As noted above, in order for alternative estoppel to apply, a non-signatory

must establish (1) a close relationship between the entities involved; and (2) the claims against it are intimately founded in and intertwined with the underlying contractual obligations. Torres, 90 F. Supp. 3d at 379 (citing Griswold, 762 F.3d at 272). "'Claims are intertwined with an arbitration agreement when the signatory's claims rely on the terms of the agreement or assume the existence of, arise out of, or relate directly to, the written agreement.'" Id. (quoting Booth v. BMO Harris Bank, N.A., No. 13-5968, 2014 WL 3952945, at *6 (E.D. Pa. Aug. 11, 2014)).

Here, the first prong of the alternative estoppel theory is met because Colon pleads that there is a close relationship between the entities involved. In her Complaint, Colon asserts that Defendants Innezzelli, Dean M. Pagano, Crudele, and Theodore Pagano, Jr. "own[] and operate" the various Club Risque locations. (Compl. ¶¶ 14, 17, 18, 20, 21, 23.) She specifically pleads that Defendants Innezzelli and Crudele are the presidents of Conchetta, Inc. and Tacony 2008, Inc., respectively. (Id. ¶¶ 14, 15.) Further, she claims that "Defendants are a single and joint employer with a high degree of interrelated and unified operations. Each of these Defendants shares the common labor policies and practices complained of herein. Indeed, upon information and belief, the sole reason for separate corporate entities was to limit the liability of each of the Defendants." (Id. ¶ 25.) As noted above, Colon also claims each defendant was an "officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants." (Id. ¶ 26.) Thus, according to the Complaint, the various owners and presidents of the Club Risque entities by definition have a close relationship with one another. Accordingly, the first prong of the alternative estoppel doctrine is satisfied.

We also find that Colon's claims are "intimately founded in and intertwined with the underlying contract obligations." DuPont, 269 F.3d at 199. The second prong is met when "the signatory's claims rely on the terms of the agreement or assume the existence of, arise out of, or

11

relate directly to, the written agreement." Torres, 90 F. Supp. 3d at 379 (quoting Booth, 2014 WL 3952945, at *6). Interestingly, Colon does not even reference the Agreement in her Complaint, much less attach it as an exhibit. However, we find that fact to be irrelevant, as the genesis of her claims clearly stems from the Agreement she entered into. For example, she claims "Defendants . . . improperly classified Plaintiff and other exotic entertainers ('Dancers') as 'independent contractors.' Consequently, Defendants failed to pay Plaintiff and its Dancers at least the applicable minimum wage, as well as premium overtime compensation for hours worked in excess of forty." (Compl. ¶ 3; see also ¶¶ 12, 33.) (footnote omitted). Colon's challenge to being classified as an independent contractor necessarily assumes the existence of, arises out of, and relates directly to the Agreement. After all, the Agreement is the very document she signed that categorizes her as an independent contractor. (See Defs' Brief; Ex. A) She even acknowledges this fact in her Response in Opposition when she states that she was given the option of being classified as an "employee" or a "licensee and temporary space lessee." (Pl.'s Resp. in Opp'n at 17.) She provides, "[o]stensibly, a Licensee and Temporary Space Lessee is an independent contractor." (Id.) Additionally, she argues that if the Agreement stands, it would effectively constitute a waiver of her statutory rights, which she claims is impermissible under federal and state law. (Id. at 20.) Accordingly, we find that Colon's wage loss claims are founded in, and intertwined with, the underlying contractual obligations. Therefore, Colon is equitably estopped from challenging arbitration as to the non-signatory Defendants.

We also note that we find it would be completely inequitable to disallow the non-signatories from compelling arbitration in light of Colon's allegations of collective wrongdoing by the Defendants. "Estoppel may also apply where the nonsignatory is alleged to have engaged

12

in 'substantially interdependent and concerted misconduct' with a signatory other than the plaintiff." Sarl v. A.M. Todd Co., No. 07-2727, 2008 WL 724607, at *10 (E.D. Pa. Mar. 18, 2008) (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)). Here, Colon has alleged that each Defendant is a "single and joint employer with a high degree of interrelated and unified operations" and grouped each of the Defendants together, as "each allegation pertains to each of the defendants." (Compl. ¶¶ 25, 26.) Colon's Complaint asserts violations of federal and state wage law against all of the Defendants based on their classification of her as an independent contractor. (Id. ¶ 3.) Thus, Colon has grouped all of the Defendants together for purposes of imposing liability, but seeks to avoid arbitration against the non-signatories because they did not sign the Agreement. According to Colon's Complaint, all of the theories of wage violations are applicable to each and every Defendant. Therefore, we find that her allegations of substantially interdependent and concerted misconduct dictate that all of the Defendants are covered under the arbitration agreement pursuant to the equitable estoppel doctrine.

### C. Dismissal or Stay of Proceedings

If a case referable to arbitration is brought in federal court, the FAA directs that the court before which the lawsuit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "The plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004); see also Devon Robotics, LLC v. DeViedma, 798 F.3d 136, 143-44 (3d Cir. 2015).

In this matter, Defendants request a stay in full in their Reply Brief. (See Defs' Reply Br. at 3, 21.) Accordingly, we will stay the case and administratively close it pending the resolution of arbitration.

## IV.    **CONCLUSION**

The parties have shown clear and unmistakable evidence that they agreed to delegate all threshold issues regarding arbitrability to the arbitrator. Supreme Court and Third Circuit precedent dictates that unless a party challenges the specific agreement to arbitrate arbitrability (i.e., the delegation clause), the provision is severable from the remainder of the contract and is valid under § 2 of the FAA and enforceable under §§ 3 and 4. Because Colon does not specifically challenge the delegation clause in the Agreement, it is fully enforceable under binding precedent. Further, we find that the principles of agency and equitable estoppel are applicable in this matter, and we will order arbitration as to all Defendants. Lastly, in light of Defendants' request for a stay, we will stay this matter and administratively close it pending the resolution of arbitration.

An appropriate Order follows.